**NATIONAL TREASURY EMPLOYEES UNION, Plaintiff,**

v.

**Donald J. DEVINE, Director, Office of Personnel Management, Defendant.**

**Civ. A. No. 84–0205.**

United States District Court, District of Columbia.

June 29, 1984.

Lois G. Williams, Director of Litigation, and Kerry L. Adams, Asst. Director of Litigation, National Treasury Employees Union, Washington, D.C., for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Paul Blankenstein and Judith F. Ledbetter, Attys., Civil Division, Dept. of Justice, Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

Before the court are cross motions for summary judgment concerning the validity of a Federal Personnel Management ("FPM") letter issued by the Office of Personnel Management ("OPM") relating to

the payment of travel and per diem expenses for employee negotiators representing unions in collective bargaining. The National Treasury Employees Union ("NTEU") contends that OPM has no statutory authority to issue such instructions to federal agencies and that, in doing so, OPM usurps the proper role of the Federal Labor Relations Authority ("FLRA"). Defendant argues that OPM acted within its authority in issuing "guidance" to federal agencies on the scope of collective bargaining, and also that plaintiff is collaterally estopped from denying OPM's authority. The court concludes that OPM is empowered under the Civil Service Reform Act of 1978, 5 U.S.C. § 7101 *et seq.* ("CSRA"), to issue such a FPM letter and will therefore grant defendant's motion for summary judgment and deny plaintiff's motion for summary judgment.

## BACKGROUND

Although this case involves a challenge only to OPM's statutory authority to advise federal agencies on labor-management relations,[1] a brief review of the substantive dispute dividing plaintiff and defendant helps to clarify the key issue. On November 29, 1983, the United States Supreme Court reversed the FLRA by deciding that federal agencies are not *required* to reimburse the travel expenses or per diem allowances of employees representing their union in collective bargaining with the agencies. *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, — U.S. —, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983) ("*BATF*"). In a footnote, the Court wrote:

> Our conclusion that federal agencies may not be required under § 7131(a) to pay the travel expenses and per diem allowances of union negotiators does not, of course, preclude an agency from making such payments upon a determination that they serve the convenience of the agency or are otherwise in the primary interest of the government.... Furthermore,

unions may presumably negotiate for such payments in collective bargaining as they do in the private sector. [Citations omitted.]

*Id.* at 449 n. 17.

Despite the Supreme Court's "presum[ption]" concerning negotiability, OPM issued FPM Letter 711–162 on January 19, 1984, in response to *BATF*, informing federal agencies that employee negotiators are generally not entitled to travel expenses or per diem allowances and that agency reimbursement decisions are "a matter outside the scope of [collective] bargaining ...," *id.* at ¶ 7(d). The parties agree that FPM Letter 711–162 is "precatory and will not bind Federal agencies in the manner of a regulation." (Defendant's Statement of Material Facts As To Which There Is No Genuine Dispute, ¶ 4.) Beyond that, however, they disagree as to its precise effect. Defendant elaborates his view by characterizing the letter as "nothing more than guidance to federal agencies reminding them of their duties under two federal laws." (Defendant's Memorandum in Support of Summary Judgment Motion, at 26.) Plaintiff, in contrast, argues that while FPM Letter 711–162 is not a "regulation," it is nevertheless "designed to have, and will inevitably have, substantial impact on agency positions." (Plaintiff's Reply Brief, at 2.) Further, plaintiff contends that OPM is not statutorily entitled to exert such influence over collective bargaining by federal agencies.

## I. PLAINTIFF IS NOT COLLATERALLY ESTOPPED FROM BRINGING THIS SUIT

 Defendant asserts that plaintiff is collaterally estopped from relitigating the issue of whether OPM may issue non-binding interpretation of precedents that govern the scope of federal sector collective bargaining, relying on *NTEU v. Devine*, No. 83–0983 (D.D.C. Nov. 25, 1983), *appeal docketed*, No. 84–5057 (D.C. Cir. Jan. 27,

---

**1.** Plaintiff abandoned two other claims raised in its original complaint, *i.e.*, whether the FPM letter was promulgated in violation of the Administrative Procedure Act and whether it is substantively correct.

1984). In that case, Judge Hogan decided that OPM had the authority to issue guidelines on prohibited and permissive subjects of bargaining, as proposed in a notice in the Federal Register. 48 Fed.Reg. 32,276 (July 14, 1983). NTEU argues that the doctrine of collateral estoppel does not apply because this case poses "materially different issues" than the case before Judge Hogan. Because the two suits involve different, albeit similar, OPM documents, the court concludes that NTEU is not collaterally estopped from pursuing this action and therefore proceeds to address the merits of this case.

## II. OPM'S AUTHORITY EXTENDS TO ISSUING GUIDELINES TO FEDERAL AGENCIES ON THE SCOPE OF COLLECTIVE BARGAINING

■ The parties disagree on the allocation of responsibility between OPM and the FLRA since enactment of the CSRA, 5 U.S.C. § 7101 et seq., in 1978.[2] Plaintiff argues that under Title VII of the CSRA, the FLRA was given sole authority to advise federal agencies concerning their collective bargaining duties. Defendant takes the position that it retains the traditional advisory role of the Civil Service Commission ("CSC"). The court finds that defendant's position is supported both by the statutory language and the legislative history of the CSRA, and by a subsequent executive order. Consequently, the court concludes that OPM may issue guidance such as FPM Letter 711–162.

### A. The CSRA does not preclude OPM from advising federal agencies

Under the CSRA, OPM assumed certain responsibilities formerly vested with the CSC, while other CSC functions were assigned to the Merit Systems Protection Board. See H.R.Rep. No. 1403, 95th Cong., 2d Sess. 4 (1978); S.Rep. No. 969, 95th Cong, 2d Sess. 7–8 (1978), U.S.Code Cong. & Admin.News 1978, p. 2723. The legislation also created the FLRA, 5 U.S.C.

§ 7104 et seq. In addition to its responsibility for adjudicating federal labor-management disputes, see § 7105(a)(2), the CSRA provides that the FLRA "shall provide leadership in establishing policies and guidance" concerning labor-management relations, § 7105(a)(1). Contrary to NTEU's view, this language does not confer exclusive authority for issuing guidance to the FLRA. Rather, use of the word "leadership" reflects Congress' understanding that other entities would be providing guidance of lesser prominence. See generally NTEU v. FLRA, 691 F.2d 553 (D.C.Cir.1982).

The statute has no particularized language spelling out OPM's role as an advisor to federal agencies, except §§ 7105(i) and 7118(b), which provide that the FLRA may request advisory opinions from OPM on the proper interpretation of its rules, regulations, and policies. The court is not persuaded that this lack of a specific grant of broader authority means OPM was denied a greater advisory role, given the CSC's traditional function and the CSRA's explicit instructions that many former policies survive enactment of the new legislation. See § 7135(b). Plaintiff's reliance on Congress' purported repudiation of the Senate version of the CSRA—which clearly contemplated an advisory role for OPM, see S.Rep. No. 95–969, 95th Cong., 2d Sess. 99 (1978)—is unavailing in light of the whole legislative history. Particularly instructive is the debate over the two versions of the bill, the Collins Amendment (i.e., the Senate version) and the Udall Amendment (i.e., the one that became law), in which the sponsors did not mention any difference in the advisory functions of OPM and the FLRA. See 124 Cong.Rec. 29167, 29173 (1978) (statement of Rep. Collins); 124 Cong.Rec. 29182 (statement of Rep. Udall).

### B. OPM is authorized to issue labor-management guidelines by Executive Order

The CSRA provides that existing executive orders are to remain in effect unless

---

**2.** Previously, federal personnel and labor-management duties had been delineated by executive order.

revoked by the President or specifically superseded. 5 U.S.C. § 7135. After the enactment of the CSRA, Executive Order 12107 substituted "OPM" for "CSC" in Section 25 of Executive Order 11491, the basis for OPM's claim that it inherited the CSC's advisory role:

(a) The Office of Personnel Management, in conjunction with the Office of Management and Budget, shall establish and maintain a program for the policy guidance of agencies on labor-management relations in the Federal service and shall periodically review the implementation of these policies. The Office of Personnel Management shall be responsible for the day-to-day policy guidance under that program. They also shall continuously review the operation of the Federal labor-management relations program to assist in assuring adherence to its provisions and merit system requirements; implement technical advice and information programs for the agencies; assist in the development of programs for training agency personnel and management officials in labor-management relations; and from time to time, report to the Authority on the state of the program with any recommendations for its improvement. (b) The Office of Personnel Management shall develop programs for the collection and dissemination of information appropriate to the needs of agencies, organizations and the public.

44 Fed.Reg. 1055, 1056 (Dec. 28, 1978).

In the face of this clear authority, NTEU argues that Title VII of the CSRA clearly supersedes Section 25 of Executive Order 11491. As discussed above, the court finds no such contradiction between Title VII and OPM's advisory function. Title VII does create the FLRA as an independent adjudicatory entity, mandated to "provide leadership in establishing policies and guidance," § 7105(a), but this is not inconsistent with an advisory role for OPM on labor-management relations. The court is similarly unpersuaded by NTEU's claim that the substitution of "OPM" for "CSC" was only a "general housekeeping order," and should accordingly be given little consideration. This court must presume that in modifying an executive order, the president means what he says.

## III. OPM'S AUTHORITY TO ISSUE GUIDANCE DOES NOT DEPEND ON THE SUBSTANCE OF THE ADVICE GIVEN

■ Plaintiff objects to the substance of the advice contained in FPM Letter 711–162 and the unequivocal language OPM uses to express its views. Specifically, NTEU asserts that these factors distinguish this case from that considered by Judge Hogan in *NTEU v. Devine*, No. 83–0983 (D.D.C. Nov. 25, 1983), *appeal docketed*, No. 84–5057 (D.C. Cir. Jan. 27, 1984), and that the distinctions warrant a different outcome.

The court agrees with plaintiff that the two OPM pronouncements do vary in the force of their language. In contrast to the earlier document, Letter 711–162 is more unqualified and declarative, and does not contain the caveat on its face that agency heads retain discretion on negotiability questions. Nevertheless, plaintiff and defendant agree that the letter is "precatory" and non-binding. (Statement of Material Facts, ¶ 4.) Because OPM is statutorily empowered to advise federal agencies, this court will not attempt to police the manner in which it chooses to express its opinions.

Plaintiff also protests that Letter 711–162 differs from OPM's earlier advice because it takes issue with the Supreme Court's view on the negotiability of travel expenses and per diem allowances, as expressed in *BATF*, 104 S.Ct. at 449 n. 17. There are two flaws in this argument, however. First, the Supreme Court merely noted in dictum that "unions may *presumably* negotiate for such payments in collective bargaining" (emphasis added); that issue was not before the Court and it was not ruled upon. Furthermore, OPM's earlier pronouncement, the basis for Judge Hogan's opinion, also took some firm positions on debatable issues of law. *See* 48 Fed. Reg. 32,276 (July 14, 1983), part (j). Like

Judge Hogan, this court finds that such instructions are within OPM's advisory authority. *See NTEU v. Devine,* No. 83–0983, slip op. at 16.

## CONCLUSION

The court finds that OPM is statutorily empowered to advise federal agencies on matters relating to labor-management relations. If its instructions are incorrect, they may be subject to challenge when adopted by the management of a particular agency during bargaining and brought to the attention of the FLRA. Accordingly, the court will enter an order of even date herewith granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment.